on behalf of Mr. Boyd. I'd like to devote my argument time today to two issues. The first is that Mr. Boyd was subjected to an unconstitutional search in violation of his rights when the canine unit entered his car without probable cause. And the second issue I'd like to talk about is the fact that he was not proven guilty beyond reasonable doubt at his stipulated bench trial. The first issue can be subdivided into two distinct issues. One, is the dog entering a vehicle a search? And two, does it matter whether that was done at the direction of the dog's handler or the dog did it on its own? And at the outset, I'd like to just point out that when the government intrudes physically into a protected space, that is a search. And in the context of cars and canines, Berry and Winningham both stand for the idea that yes, a dog going into a vehicle for law enforcement purposes, a canine unit, is a search. And both of those cases turned on the fact that the dog entered the vehicle without the consent of the owners. And therefore, the evidence that it ultimately uncovered was suppressed because the search was non-consensual. And if the Fourth Amendment didn't enter into this question, if Fourth Amendment constraints did not apply to a canine unit entering a vehicle like this, then consent would be unnecessary. And just in the same vein, when the United States Supreme Court discusses exterior free air sniffs, the line drawing they do when they say exterior free air sniffs are okay because they're not physically intrusive and they don't require entry, that line drawing wouldn't be necessary if the dog entering the vehicle was not a search. What about the door being open consensually? Well, Your Honor, that wasn't consent to enter the vehicle, though. Those are two very distinct things. Just like opening a door for an officer doesn't give him the right to enter your home. Well, the door was open consensually, not specifically for the search, but I think it was open consensually, wasn't it? The door itself was open consensually, yes, Your Honor. But Mr. Boyd never gave consent for the dog to enter the vehicle. No, I understand that. Those are different things. And that brings me to the next question, which is, does it matter whether the dog did it on its own or it was directed to by the handler? And I would suggest the answer is no. And the crucial point there is, again, a physical entry in this case is still a search. But it's important to note that these are not household pets. These are not lassie. These are well-trained, dangerous animals, and they are treated like law enforcement. For that, I would direct you to some of the provisions the legislature has enacted where they treat these animals as they give them higher protections against harm, just like police officers are given higher protections against harm than ordinary citizens. And they're also given provisions for retirement. They are treated like law enforcement. They are not simply household pets. Before you ever get to the Fourth Amendment, though, isn't it true that there has to be some showing that the area involved has an expectation of privacy? That's right. So what evidence did the defendant offer to show his expectation of privacy in this case as to this vehicle? It wasn't his. It wasn't his. He was driving it in exclusive control at the time. Admittedly, the record is pretty underdeveloped, but there was no – And it's his burden to show, correct? That's correct. So what evidence is there that he carried his burden to even get the Fourth Amendment invoked? Well, one factor is whether he was in exclusive control, and he certainly was. Another factor is his subjective expectation, and he's repeatedly asserted his Fourth Amendment rights in the trial court and in the jury. But you don't get to the Fourth Amendment until we get an expectation of privacy. So the only thing that it seems like from the record we have is that he got into a car that he didn't own at a motel and drove it to a Burger King and made an illegal left turn. That's right. The other component to this, though, is that this was never challenged or litigated in the trial court. Everyone seemed to accept that Mr. Boyd had a subjective expectation of privacy. The State didn't challenge that. The trial court didn't challenge that. The State argued that except – Do you think we have the right to look at that? I'm sorry? Do you think that this court, the appellate court, has the right to look at that aspect The appellate court has the right, yes. But given that that's a factual determination that would be up to the trial court, the standard would be whether it's against the manifest way to the evidence. The trial court – There's been no ruling on it. The – as you say, the State began with the Fourth Amendment. But before we reach the Fourth Amendment, do you think that this court has the right to say, was there an expectation of privacy that invokes the Fourth Amendment? Yes, absolutely, this court has the right to do so. And while there wasn't an explicit ruling, there was an implicit one in the sense that the State argued exceptions to the warrant requirement. You don't get to exceptions to the warrant requirement until you've made that prima facie showing. The trial court's ruling was based on those exceptions and said, yes, these exceptions apply. You don't get to those until you've decided, yes, the defendant carried his initial burden. And so I would suggest, Your Honor, that this court could but should not reverse that finding because the trial court was the one that made that factual and credibility determination. To return to – I want to return to the idea that it doesn't matter whether the dog was directed or not. In U.S. v. Thomas out of the Second Circuit, the Federal Circuit Court said, these animals are much like advanced sensory equipment. They're not simply like a pair of glasses on an officer. They are something that can detect things that humans cannot detect. And that puts it very much in the realm of something like the thermal imaging equipment from Kiowa, where law enforcement is using this equipment to detect things that are undetectable to the human eye or the human senses in general. And it would be illogical to say, you know, we're not responsible for the intrusions of our sensory equipment. And to go along with that, there are some public policy concerns with respect to this and the first is that having these dogs do things on their own, sort of of their own volition, has the risk to unnecessarily escalate things. And I would say, imagine if Mr. Boyd was still in the vehicle when this dog jumps in the car and now he's in a confined space with a large, well-trained, or ostensibly well-trained, dangerous German shepherd. The other concern is that it would allow law enforcement to intentionally or not do an end-run around the Fourth Amendment because they're saying, this dog can go places we cannot go, but we can still reap the benefits of what it finds. And that's exactly what happened here, where the officers had no basis to go in the car. They had no basis to actually search themselves, but when the dog gets to go in and alerts on the council, they can now go in and say, we found the sevenths. What difference, in what way do you think, what relevance is there to the defendant's actions concerning the council when he was interrogated by the officers who made gestures toward the council? I would say for Fourth Amendment purposes, they're not relevant because they had no other basis to suspect that contraband was in the vehicle other than the dog alert once it was inside. So you've got the gestures towards the council, you've got a peripheral sniff when the dog goes in, and a door that was opened previously by consent when the other officer was talking to the passenger. Yes, I would say that's an accurate summary. But he was asked to produce some sort of document, so him reaching for the council isn't by itself any sort of suspicious activity. In the brief amount of time I have left, I want to try to touch on the reasonable doubt issue. And because Mr. Boyd did not have the cocaine on his person physically, the state had to prove constructive possession. And that entails knowledge of the contraband and the intent to maintain control and dominion over it. But there was no evidence admitted at trial of where the cocaine was in the vehicle, and there was no evidence admitted at trial of any statements he made about the cocaine. So all the state had was he was in a vehicle with cocaine somewhere in the vehicle, and the vehicle did not belong to him. The vehicle did not belong to him. It was not his vehicle. I have a question. I know your time is up, but I have a question. Is that okay? This cash that was found was marked, right? Right. As cash that had been previously used in a buy. Was that evidence introduced as a part of this record, finding him guilty? I believe so. I believe so. But that still runs into the same issue, Your Honor, of it just happened to be in the car with him, in a car that doesn't belong to him. And there's really no link from him to those marked funds. Okay. And secondly, you're aware of Federal case law that would go contrary to your argument about the dog. Yes. All right. Thank you. Would you like me to respond to that? No.  Thank you, Counsel. Counsel? May I please record? Jennifer Camden on behalf of the people. If I may answer your question, Justice Cates. Yes, the evidence that the 1,500 and change dollars in cash, including the official Southern Illinois Enforcement Group advance funds for the purchase of drugs from the known drug dealer was found in the vehicle, and that evidence was part of the evidence presented at the stipulated bench trial, Your Honor. Okay, thank you. And I have another question for you. Sorry to interrupt your sequence of events, but very quickly, do you think the state can waive this expectation of privacy issue, or do you think the appellate court can look at it independently? I do not believe that the state can forfeit this issue. I agree with defense counsel that this court can look at that issue independently, that it was a defendant's initial burden to prove that the Fourth Amendment applied. So there are six factors that this court may use. Those are the Rosenberg factors to determine whether he had a legitimate expectation of privacy in the vehicle. Now, the defendant is arguing that two of them applied. I'd note at the outset that it's a totality of the circumstances that the court may use. But even with regard to those two factors that the defendant raises, neither of those factors is satisfied. Firstly, he argues that he had the ability to control or exclude others from the vehicle in light of the fact that he was driving it with the key in the car, presumably. The people's response to that is contained in the answer brief at pages 13 and 14 in which the people note that the Illinois appellate court has repeatedly rejected the argument that that type of evidence satisfies this Rosenberg factor even where a defendant has the key to a vehicle or to an apartment and can control access to as a factual matter. What matters to a reviewing court in this state is proof of his or her authority to do so. And that's the point on which the satisfaction of this factor has been willed to turn in this state. And where a defendant does not present evidence of this authority, that factor is not satisfied. The second factor that the defendant invokes here is whether he had a subjective expectation of privacy in the property. He argues that there's proof of that in that he filed a motion to suppress and in that he's arguing for the suppression of that evidence here on appeal. But that's not evidence presented to the circuit court regarding the defendant's subjective thoughts and beliefs and expectations regarding that argument of establishing a prima facie case. If it did, if the assertion of that right would imply the subjective expectation of privacy, then the subjective expectation wouldn't be a Rosenberg factor. It would be understood to apply every time a defendant files a motion to suppress and argues that the Fourth Amendment applies. I also want to address the defendant's argument that this court should review the issue of the legitimate expectation of privacy on a manifest weight of the evidence standard based on what he argues is an implied factual finding by the trial court that he had this legitimate expectation of privacy. First, it's unclear what credibility finding that the defendant is referring to in that he didn't testify. Also, the question of whether a defendant has proven a legitimate expectation of privacy is a legal question reviewed de novo. And that's from the Rosenberg case, the Rosenberg case. So the fact that the trial court apparently ignored this threshold issue on which the defendant had the burden of proof is not entitled to any deference on review. And at any rate, a factual determination, even if there was one, in a ruling on a motion to suppress may be reversed if against the manifest weight of the evidence. And here, as I just said, the defendant presented no evidence that would satisfy any Rosenberg factor. So any factual finding, implied or otherwise, regarding the defendant's satisfaction of a prima prima evidence. Next, with regard to the dog's entry into the vehicle, people describe its position in the answer brief, and I'll stand on that except to note that in response to the defendant's argument that this case is like the Kylo case and that the dog is like a police instrument, like the thermal imaging device, the police in Kylo made a conscious, volitional decision to deploy that tool to enter a protected space. Here, the trial court made a specific factual finding that police made no such decision with regard to that dog. The equipment in Kylo did not act instinctively. In this case, the dog did. And that's why there's no State action and no such under the Fourth Amendment. I'd also note that the State's position reflects the law in its cited cases, admittedly from other districts, but they are consistent across the board. And they go back to 1989, and in the nearly three decades of precedent discussed by the State, there's no sign that the law enforcement officers in any of the five Federal circuits to take the State's position in this case or the several States are training dogs to enter vehicles unprompted. And in any event, I have to note that that would be State action to facilitate entry into vehicles, evidence of which could be presented at some future suppression hearing if the need arose. To sum up, the dispositive factor in all of these dog entry cases is whether the officers facilitated or led the entry of the dog into the protected space. That's what distinguishes the defendant's cited cases, Winningham and Berry and Jardines, from the people's cited cases in the anti-rape. Moving on to the reasonable doubt issue, I just want to address the standard of review. The defendant argues that it's de novo and argues that there's no factual dispute here. The defendant has raised a factual dispute regarding whether the defendant knew that the cocaine was in the vehicle. And on the disputes whether the court could have found this beyond a reasonable doubt based on the evidence presented at the stipulated bench trial, whether the defendant possessed that mental state was an issue of fact. Whether a defendant possesses a mental state is an issue of fact. So the question for this court is whether the evidence presented at the stipulated bench trial was so strong that any rational trier of facts could have found beyond a reasonable doubt that the defendant knew the cocaine was there as a factual matter. Review is not de novo. The defendant argues that the State didn't prove his guilt because he exercised control over the area where it was found, namely the vehicle. The State's argument is, State's response is that first the defendant didn't make this argument in the opening brief. His opening brief was confined to the knowledge factor, not the immediate and exclusive control factor. So in that sense it's waived under, or forfeited under Rule 341. At any rate, the factor is whether the defendant possessed immediate and exclusive control over the vehicle. And the only person who had immediate and exclusive control over the vehicle was him, the owner of the vehicle. He wasn't in the vehicle. He was alone in the vehicle. Next, the defendant argues the challenges, the probative value of the evidence presented at the stipulated bench trial that the defendant was in fact tripped, arguing that it shows only that he used this nickname, happened to use this nickname, not that he actually was the cocaine dealer being investigated by the Southern Illinois Enforcement Group. But the question to Agent Bethel that yielded that information wasn't whether police ever learned that the defendant used that nickname, Tripp, but whether they learned that the defendant who was Timothy Boyd from Mount Vernon, quote, was in fact Tripp, meaning the person already identified in the evidence as the man from Mount Vernon named Timothy and nicknamed Tripp who was then being investigated as the cocaine dealer for known drug dealer Cooks and who was believed to be selling cocaine with him in a Marion hotel. Now, that evidence was already before the court at the stipulated bench trial. So the defendant on appeal has an alternate interpretation of this questioning about whether police ever learned that the defendant was in fact Tripp, but factual inferences are to be drawn favorably to the state on appeal. This was evidence that he was the Tripp being investigated, not just that he happened to have that nickname. The defendant also suggests in the reply brief at pages 17 and 18 that the evidence that he attempted to flee and that he was very nervous during the traffic stop was not necessarily inculpatory because maybe he was just nervous during the traffic stop. In other words, it proposes a hypothesis consistent with innocence. But circumstantial evidence of guilt need not exclude reasonable alternative hypotheses under Jackson v. Virginia. And these signs of nervousness and attempts to flee are evidence of consciousness of guilt, which taken together with the more direct evidence supports the court's conviction of the defendant on this count. And in my time remaining, I want to address the inevitable discovery issue. The state's arguing that regardless of any issue relating to the defendant's argument that the doctrine doesn't apply because it inevitably would have been discovered. And people want to point out that in response to the defendant's argument that the doctrine doesn't apply because the vehicle wasn't actually towed. Under the inevitable discovery issue, the issue is whether it would have been discovered by alternate lawful means, not whether it actually was discovered by alternate means. Ms. Camden, the record seems a little skimpy on any information about policies, towing, although one person says it would have been towed. You would agree that there's not a lot of development in that issue in the record, I think, wouldn't you? It's true that there was no evidence of tow policy introduced at trial. There was testimony from the police officers that the vehicle would have been towed. And the court, there was evidence that the vehicle was in the private Burger King parking lot. Okay. And I just direct the court toward the trial court's ruling on that issue when it stated that when it reasonably inferred from the evidence Burger King has no interest or desire, I would assume, to have a vehicle left in their parking lot indefinitely. But the case law seems to require a little bit more flushing out of that issue. And I didn't see it in the record other than somebody saying it would have been towed anyway. And I have one other question. The State in this case at the trial level parsed out the testimony between the preliminary hearing versus the, help me here, there was another hearing. Oh, the suppression hearing. And I think that the preliminary cause hearing is where the money was identified. That's why I asked you about it. I don't think the money was identified in the suppression hearing. So correct me if I'm wrong there. I don't have the page number in front of me, but I know that I have it in What you think the money is to be found in the suppression hearing and the fact that it was marked? I do, Your Honor. What was not in the suppression hearing, the fact that was contained, I believe, in the preliminary hearing, and again, I know that I went through this in the Just tell me what the facts were. Was that the fact of where the money was found in the car. I don't believe that that fact was introduced at the suppression hearing and hence in the stipulated bench trial. I think that that's the distinction. I couldn't understand why the state wouldn't just incorporate everything. Yeah, that was my impression. Thank you. May I respond to your other question about the towing? You asked, isn't the record in these cases usually more fleshed out? My response is that those cases aren't inevitable discovery cases. Cases where the issue isn't whether an actual tow that actually occurred was lawful and an actual inventory search actually was lawful, but whether a tow would have occurred, and I think that that's a distinction here. Okay. Thank you. Thank you, Justice Kagan. Your Honor, I briefly want to return to Justice Kates' question about federal case law. First of all, those cases aren't binding on this Court, but more importantly But our Supreme Court says we can look to those cases where there's no precedent in our state law. Certainly they can be looked to, but I would suggest that you shouldn't because the test for whether something is or is not a Fourth Amendment violation returns to this question of is it something that the person has a subjective expectation in, and is that something that society is prepared to recognize? And I would suggest that, yes, having a law enforcement canine entering your vehicle, whether they told it to or not, is still something that we as a society are prepared to recognize as unacceptable. Well, if the door was closed and they went through the window, I might understand your argument, but here the door was open consensually. So the free sniff that occurs of the air, I mean, this was kind of happenstance, wasn't it? The dog could smell it from outside. But the dog didn't alert before it went inside, which is I think they're to alert wherever they find it, right? If it was in the wheel well, they would have alerted at the tire. But that would have been outside the vehicle. The point is, when at the time it entered the vehicle, there wasn't any legal basis for it to do so. It didn't alert that it smelled something and then went in and alerted again when it figured out exactly where it was. And that touches on what opposing counsel said about Kylo and that that was a deliberate decision. And I would submit to your honors that if Kylo was factually different and police had used this thermal imaging accidentally to image a house, and they went back and they said, oh, look, we accidentally took these images, look what we found, we better go apply for a warrant, I would suggest the outcome would be exactly the same, that they still looked in a place that they weren't allowed to look. And that would still be a Fourth Amendment violation. With respect to... I don't think there was any issue about probable cause. I think everyone agreed there was no probable cause at the time the dog took a free sniff, right? Right. And that's precisely my argument, Your Honor, that the dog entering the vehicle without probable cause was the unconstitutional search. It's an extension of the free sniff with the door open. I would disagree with that because the dog doesn't alert before it goes in. But the federal case law would disagree with that argument. Right. And that brings me back to the fact that I think those cases are not accurately decided because they don't use this question of is this something we're prepared to recognize as a society, that we should have an expectation of privacy? With respect to the reason without argument and the question of did we argue in the opening brief that Mr. Boyd didn't own the car and he didn't have exclusive control over it, we did mention that at page 34 of our opening brief. And with respect to the fact that he at some point acknowledged, yes, Tripp is a nickname that I'm associated with, that was given by an anonymous tip. Someone tipped off the police and said someone named Tripp is selling cocaine. And all it is is an anonymous tip. That doesn't really have any weight on whether or not Mr. Boyd was actually selling cocaine. And as to the nervousness aspect, it wasn't just the traffic stop. It was the fact that he had just been pulled over. He didn't have a license. And he was about to be arrested for driving without a license. And I think the officer said obstructing justice because he had lied about what his name was. That's plenty of reason for him to be nervous to begin with, whether or not the cocaine was his. And lastly, I want to just touch on the inevitable discovery issue. And I like to call this case an issue of hypothetical discovery. Because as opposing counsel pointed out, no one ever testified that the vehicle was in fact towed. They never testified as to what the impoundment procedures were. All they said was it was going to be towed. And all these factors that inventory searches have to meet, they have to be lawful. The purpose has to be to protect the property and protect police from claims of loss still on a damaged property and guard police from danger. And the inventory search must be conducted in good faith pursuant to reasonable standardized procedures. We don't have any of that. But we also don't even have evidence that the vehicle was ever actually towed and impounded. So there was no inevitable discovery because no one can say what actually happened to this vehicle. So based on all that, I would personally demand for a new trial or in the alternative find that the State did not prove Mr. Boyd guilty beyond a reasonable doubt and vacate his commission. Thank you. Thank you.